UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA GOODEN, an individual; and MICHELLE HALL, an individual, | No.  2:11-cv-02595-JAM-DAD |
| Plaintiffs, | **ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| v. | |
| SUNTRUST MORTGAGE, INC., a Virginia corporation, | |
| Defendant. | |

This matter comes before the Court on Plaintiffs Sheila Gooden and Michelle Hall's ("named Plaintiffs") Motion for Class Certification (Doc. #83-1) pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Defendant SunTrust Mortgage, Inc. ("Defendant") opposes the motion (Doc. #91), and Plaintiffs replied (Doc. #105-2).  A hearing on this Motion was held on November 15, 2013.  At the hearing, the Court denied this Motion with respect to certain of the proposed classes and took the Motion under submission as to certain other proposed classes. The Court, in this Order, reaffirms its decision stated at the

1

1   November 15, 2013 hearing and, for the reasons set forth below,

2   denies Plaintiffs' motion in its entirety.

3

4                   I.   FACTUAL AND PROCEDURAL BACKGROUND

5       This action originated when named Plaintiff Gooden filed her

6   complaint in this Court on September 30, 2011.  Gooden alleges

7   that she obtained a mortgage from Defendant in June 2005 to

8   refinance the existing debt on her property.  Plaintiff Gooden's

9   property is located at 632 S. Murdock, Willows, California 95988.

10  According to Plaintiff, the terms of the mortgage agreement

11  required Plaintiff Gooden to purchase hazard and flood insurance

12  coverage in an amount at least equal to the replacement value of

13  the improvements on the property or the principal balance of the

14  mortgage, whichever was less.  Plaintiff alleges that she

15  maintained coverage on the property between $130,130 and $161,960

16  at all times.

17      Plaintiff Gooden alleges that in October 2010, after six

18  years of carrying the same amount of insurance, Defendant

19  determined without explanation that her existing insurance

20  coverage was inadequate.  Gooden alleges that in March 2011,

21  Defendant force placed additional flood and hazard insurance on

22  her property and sent her a mortgage bill that contained line

23  item charges for the premiums of the additional coverage.

24  Defendant contends that the line item charges did not include a

25  force placed hazard policy.

26      On June 19, 2013, Plaintiff Gooden was granted leave to

27  amend the complaint (Doc. #62).  The First Amended Complaint

28  ("FAC") expanded the class on whose behalf the second and third

1    causes of action are being brought and added named Plaintiff Hall
2    to the litigation (Doc. #63).

3        The FAC alleges that in August 2008 Hall refinanced her
4    mortgage on her property at 3229 Glennon Place, Bronx, New York
5    10465 with Defendant.  Plaintiffs allege Defendant force placed
6    hazard insurance on Plaintiff Hall despite the fact that she
7    already had adequate insurance.  However, Hall has reconsidered
8    these claims and admitted that the hazard policy discussed in the
9    FAC was not actually force placed.  Hall does further allege that
10   Defendant force placed unnecessary flood insurance policies on
11   her home.

12       This Court granted Defendant's most recent Motion to Dismiss
13   (Doc. #88), rejecting Plaintiffs' theory that the loan documents
14   set a contractual maximum on the amount of hazard insurance that
15   could be required of the borrowers.  The Court found that the
16   discretionary language in the documents controlled.  The Court
17   further found that the fourth cause of action alleging violation
18   of Cal. Civ. Code § 2955.5 would be dismissed insofar as it
19   alleged a violation based on force placing coverage exceeding the
20   outstanding loan balance, rather than replacement value.

21       The Court has jurisdiction over Plaintiffs' federal causes
22   of action pursuant to 28 U.S.C. § 1331 and the related state law
23   claims pursuant to 28 U.S.C. § 1367.

24

25                         II.   OPINION

26       A.   Judicial Notice

27       Defendant has asked the Court to judicially notice two
28   documents.  The first is a "Brief for the United States as Amicus

                                    3

1    Curiae Supporting Appellees," submitted by the United States

2    Department of Justice and the Department of Housing and Urban

3    Affairs in a case pending in the Eleventh Circuit.  RJN (Doc.

4    #97) at 1, Exh. A.  The second is a "Consumer Compliance Handbook

5    2006-2012," issued by the Board of Governors of the Federal

6    Reserve System.  Id., Exh. B.  Plaintiffs have not opposed the

7    request.

8         The Court may judicially notice a fact that is not subject

9    to reasonable dispute because it is either generally known within

10   the Court's jurisdiction, or can be accurately and readily

11   determined from sources whose accuracy cannot be reasonably

12   questioned.  Fed. R. Evid. 201.

13        "As the brief is not a 'fact,' legal or adjudicative, but

14   only legal argument, Fed. R. Evid. 201 is not a bar."  Natural

15   Res. Def. Council v. Sw. Marine, Inc., 39 F. Supp. 2d 1235, 1237-

16   43 (S.D. Cal. 1999) aff'd, 236 F.3d 985 (9th Cir. 2000).  The

17   Court takes notice of the amicus brief as persuasive argument.

18   The government handbook is a government publication providing

19   guidance on consumer compliance and flood insurance regulation.

20   The Court also takes notice of the handbook.  See Indep. Living

21   Ctr. of S. California v. City of Los Angeles, CV 12-0551 FMO

22   PJWX, 2013 WL 5424291, at *13 (C.D. Cal. 2013).

23        B.   Proposed Classes

24        Plaintiffs seek to certify the following classes:

25             1.   Nationwide Hazard Insurance Class (1st Cause of
                    Action)
26

27        All persons who have or had loans with Defendant secured by

28   residential property in the United States who were force placed

                                   4

1    for hazard insurance in excess of the lesser of (1) the

2    replacement cost of the property or (2) the greater of the unpaid

3    principal balance at the time of force placement and 80% of the

4    replacement cost of the property on or after September 30, 2010.

5    ///

              2.    Nationwide Flood Insurance Class (2nd Cause of
6                   Action)

7
         All persons who have or had loans with Defendant, secured by
8
     residential property in the United States, who were force placed
9
     for flood insurance in excess of the amount required under the
10
     Flood Disaster Protection Act, on or after June 19, 2012.
11
              3.    Breach of Contract Hazard Classes (3rd Cause of
12                  Action)

13
         This class is broken into two sub-classes revolving around
14
     hazard insurance forced placed in excess of what was required by
15
     Plaintiffs' contracts.   This class was limited by this Court's
16
     ruling on Defendant's Motion to Dismiss (Doc. #88).   Reply (Doc.
17
     #105-2) at p. 2.
18
                    a. California Breach of Contract Sub-Class
19
         All persons who have or had loans with Defendant, secured by
20
     residential property in the state of California, who were force
21
     placed for hazard insurance in excess of the replacement cost of
22
     the property on or after September 30, 2007.
23
                    b. New York Breach of Contract Sub-Class
24
         All persons who have or had loans with Defendant, secured by
25
     residential property in the state of New York, who were force
26
     placed for hazard insurance in excess of the replacement cost of
27
     the property on or after June 13, 2007.
28
                                      5

4.    <u>California Hazard Class (4th & 5th Causes of Action)</u>

All persons who have or had loans with Defendant, secured by residential property in the State of California, who were force placed for hazard insurance in an amount greater than the replacement cost of the property on or after September 30, 2007.

5.    <u>California Flood Class (6th Cause of Action)</u>

All persons who have or had loans with Defendant, secured by residential property in the State of California who were force placed for flood insurance in excess of the amount required under the Flood Disaster Protection Act on or after September 30, 2007.

C.   <u>Legal Standard</u>

According to Federal Rule of Civil Procedure 23(a), a plaintiff hoping to certify a class must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

The plaintiff must also meet one of the requirements listed under Federal Rule of Civil Procedure 23(b). Although Plaintiffs request the certification of hybrid classes under both Rule 23(b)(2) and (b)(3), the Court finds the monetary relief sought predominates over the injunctive relief being sought rather than being incidental to it, and therefore it is most appropriate to certify, if at all, under Rule 23(b)(3). <u>In re Paxil Litig.</u>, 218 F.R.D. 242, 247 (C.D. Cal. 2003); <u>Wal-Mart Stores, Inc. v. Dukes</u>,

1   --- U.S. ----, 131 S.Ct. 2541, 2560-61 (2011).  Therefore, the

2   only 23(b) requirement at issue in this litigation is: "that the

3   questions of law or fact common to class members predominate over

4   any questions affecting only individual members, and that a class

5   action is superior to other available methods for fairly and

6   efficiently adjudicating the controversy."  Fed. R. Civ. P.

7   23(b)(3).

8       Certification is proper "only if the trial court is

9   satisfied, after a rigorous analysis, that the prerequisites of

10  Rule 23(a) have been satisfied."  Dukes, 131 S.Ct. at 2551

11  (internal citations omitted).  The ability of the proposed class

12  to satisfy Rule 23 is the primary focus of a class certification

13  analysis, but that analysis may overlap with the legal and

14  factual issues underlying the plaintiff's claims insofar as the

15  practical resolution of those claims relate to the prerequisites

16  of Rule 23.  Id.

17      D.   Rule 23 Requirements

18           1.   Numerosity

19      Numerosity is satisfied if "the class is so numerous that

20  joinder of all members is impracticable."  Fed. R. Civ. P.

21  23(a)(1).  Plaintiffs' satisfaction of this requirement is not

22  challenged by Defendant and the Court finds it to be clearly met.

23           2.   Commonality

24      Commonality is required pursuant to Rule 23(a)(2).  In the

25  past, a plaintiff satisfied this element by showing at a minimum

26  the "existence of shared legal issues with divergent factual

27  predicates" or "a common core of salient facts coupled with

28  disparate legal remedies within the class."  Hanlon v. Chrysler

7

1  Corp., 150 F.3d 1011, 1019-20 (9th Cir. 1998).  In Dukes, the

2  Supreme Court clarified what Rule 23(a)(2) requires.  "What

3  matters to class certification . . . is not the raising of common

4  'questions'—even in droves—but, rather the capacity of a

5  classwide proceeding to generate common answers apt to drive the

6  resolution of the litigation."  Id. at 2551 (internal quotations

7  omitted) (emphasis in the original).  Even a single common

8  question that meets these criteria satisfies rule 23(a)(2).  Id.

9  at 2556.

10     In addition to the threshold requirement of Rule 23(a)(2), a

11  plaintiff seeking certification under Rule 23(b)(3) must satisfy

12  two additional commonality conditions: (1) "[c]ommon questions

13  must 'predominate over any questions affecting only individual

14  members,' and [(2)] class resolution must be 'superior to other

15  available methods for the fair and efficient adjudication of the

16  controversy.'"  Hanlon, 150 F.3d at 1022 (quoting Fed. R. Civ. P.

17  § 23(b)(3)).

18     Under Rule 23(b)(3), plaintiffs seeking to represent a class

19  must show that a class action is superior to other methods of

20  adjudication considering "the likely difficulties in managing a

21  class action."  Fed. R. Civ. P. 23(b)(3).  The "manageability

22  requirement includes consideration of the potential difficulties

23  in notifying class members of the suit, calculation of individual

24  damages, and distribution of damages."  Six (6) Mexican Workers

25  v. Ariz. Citrus Growers, 904 F.2d 1301, 1304-305 (9th Cir. 1990).

26     Since Rule 23(b)(3) is basically a heightened commonality

27  inquiry, the two analyses are typically made together.

28

1

### 3.  Typicality

2       Rule 23(a)(3) requires that the claims or defenses of the

3  class representative "be typical of the claims or defenses of the

4  class."  "A class representative must be part of the class and

5  possess the same interest and suffer the same injury as the class

6  members."  Dukes, 131 S.Ct. at 2550 (citation omitted).  The

7  typicality requirement is satisfied only when "each class

8  member's claim arises from the same course of events, and each

9  class member makes similar legal arguments to prove the

10 defendant's liability."  Stearns v. Ticketmaster Corp., 655 F.3d

11 1013, 1019 (9th Cir. 2011).

12

### 4.  Adequacy

13      Rule 23(a)(4) has two requirements: (1) that the named

14 plaintiffs and their counsel do not have conflicts of interest

15 with the proposed class; and (2) that the named plaintiffs and

16 their counsel can prosecute the action vigorously on behalf of

17 the class.  Hanlon, 150 F.3d at 1020.  Challenges to adequacy are

18 not relevant unless they bear on the existence of conflicts among

19 class members or plaintiffs' ability to vigorously prosecute

20 their case.  Id.

21

### 5.  Ascertainability

22      In addition, implicit in Rule 23 is the requirement that the

23 classes must be clearly ascertainable.  Quezada v. Loan Ctr. of

24 California, Inc., No. 2:08-CIV-00177-WBS-KJM, 2009 WL 5113506, at

25 *2 (E.D. Cal. 2009).  "A class definition must be 'precise,

26 objective, and presently ascertainable.'  'An adequate class

27 definition specifies "a distinct group of plaintiffs whose

28 members [can] be identified with particularity."'"  Id. (internal

1    citations omitted).

2        D.   Analysis

3            1.   Ascertaining Replacement Value

4        Defendant's main argument in the Opposition is that each

5    cause of action brought on behalf of the classes requires a

6    determination of the replacement value of each of the class

7    members' homes, a calculation that Defendant contends is

8    "inherently individualized" and cannot be determined on a class-

9    wide basis.  Defendant contends that this results in deficiencies

10   in the ascertainability of the classes, and the commonality,

11   predominance, and superiority requirements.

12       Again, implicit in Rule 23 is the requirement that the

13   classes must be clearly ascertainable.  Quezada, 2009 WL 5113506,

14   at *2.  In addition, although the general rule in the Ninth

15   Circuit is that the need for individualized damages calculations

16   alone cannot defeat class certification (Yokoyama v. Midland

17   Nat'l Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir. 2010)), the

18   Supreme Court in Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1432-

19   33 (2013), found that a plaintiff seeking certification must

20   present an adequate model for determining damages on a classwide

21   basis in order to meet the predominance requirement.  It need not

22   be exact but it must present a model that establishes consistency

23   between the plaintiff's damages case with its liability case.

24   Id.  This determination must be made even if the court's analysis

25   would also be pertinent to a merits determination.  Id.

26       Plaintiffs contend the classes are ascertainable by, in

27   relevant part, analyzing the replacement cost value of the class

28   members' properties at the time an insurance policy was force

10

1   placed.  MCC at p. 13.  Plaintiffs argue that the Court could

2   simply use the value that Defendant uses in its own systems for

3   determining replacement value.  They admit that Defendant does

4   not actually calculate replacement cost on its own, but rather

5   uses proxies, including a borrower's "last known voluntary

6   coverage amount."  Id. at p. 14; Reply at pp. 3-4.  Plaintiffs

7   contend it does not matter what proxy Defendant uses.  They

8   argue: "Because [Defendant] tracks the data of the amount it uses

9   as the proxy, a comparison between the proxy for replacement cost

10  can be made in order to determine the maximum amount of insurance

11  [Defendant] can force place."  MCC at p. 14.  They argue the use

12  of Defendant's proxies are appropriate for determining whether

13  Defendant has force placed insurance in excess of the contractual

14  or statutory maximums because it is the same way that Defendant

15  tracks its "portfolio of over 800,000 loans to ensure they have

16  adequate insurance."  Reply at p. 4.

17       Defendant argues that Plaintiffs' plan to use Defendant's

18  own proxy for replacement value is inappropriate.  It relies on a

19  report from its own expert, Richard Baum.  In the report, Baum, a

20  former Chief Deputy Insurance Commissioner for the California

21  Department of Insurance ("CDI"), opines on whether the CDI has

22  established a consistent definition for the term "replacement

23  cost" and whether that definition requires individualized

24  consideration of each dwelling.  Barilovits Decl. (Doc. #92) ¶ 2,

25  Exh. A at p.1.  Baum states that replacement cost is not a static

26  number, but rather one that requires consideration of ever

27  changing variables and which "does not lend itself to the simple

28  application of previously fixed numbers."  Id. at p. 3.  He goes

                                   11

1    on to state:

2         The Department historically has resisted allowing an
          insurer to use previously fixed numbers such as
3         homeowner's outstanding loan balance or last selected
          coverage amount as a surrogate for replacement
4         coverage.  While such fixed numbers may be equivalent
          to replacement cost under some circumstances, under
5         other circumstances they will not be.  . . . There are
          simply too many variables that can render the
6         borrower's last known voluntary coverage amount an
          inaccurate reflection of replacement cost.
7
     Id.   In addition, Defendant points to regulations recently
8
     promulgated by the CDI laying out the many factors that should be
9
     examined in determining replacement value.   See Cal. Code Regs.
10
     Tit. 10 § 2188.65.
11
          Plaintiffs' proffered plan to determine replacement value
12
     based on Defendant's proxies raises an issue of first impression.
13
     The viability of Plaintiffs' claims hinges on whether or not
14
     Defendant force placed policies on putative class members in
15
     excess of replacement value, in violation of contractual language
16
     and specific statutory law.  Plaintiffs' plan relies on educated
17
     guesses as to the replacement value of each home at issue.
18
     Simply because Defendant uses these proxies to determine the
19
     amount of insurance it will require of its borrowers as part of
20
     its own business model does not change the fact that these
21
     proxies are essentially estimates that do not take into
22
     consideration the many individual factors that might affect a
23
     particular home's replacement value.  Therefore, the Court is
24
     being asked to ascertain membership in each of these classes,
25
     determine Defendant's liability, and calculate the amount of
26
     damages incurred all based on a shorthand calculation of the
27
     value of borrowers' homes.
28
                                   12

1    Without a more accurate and reliable class wide solution to

2    calculating replacement value, ascertaining the classes and

3    ultimately determining Defendant's liability would require the

4    Court to examine the individual replacement value of each class

5    member's home to determine if they suffered an actual injury from

6    the force placement of policies.  Such an individualized inquiry

7    makes certification of this claim inappropriate.  <u>Tien v. Tenet</u>

8    <u>Healthcare Corp.</u>, 147 Cal. Rptr. 3d 620, 629 (Ct. App. 2012).  In

9    other words, because replacement value cannot be determined on a

10   class wide basis, the claims are not capable of proof at trial

11   through evidence common to the class.  Individual issues would

12   predominate, negating the commonality and superiority

13   requirements.  <u>See</u> Rule 23; <u>Comcast Corp.</u>, 133 S.Ct. at 1432-33.

14   Accordingly, the Court denies certification of each of the

15   classes proposed by Plaintiffs as each would require calculation

16   of replacement value.

17       Although the Court finds Plaintiffs' entire motion for class

18   certification is fatally flawed on the issue of replacement value

19   determination, the Court details below the other grounds upon

20   which it finds certification improper.

21           2.  <u>TILA Classes</u>

22       Plaintiffs seek to certify two nationwide classes, one for

23   hazard and one for flood insurance, based on their TILA claims in

24   the first and second causes of action.  They contend the two

25   classes consist of Defendant's customers, who are asserting

26   claims that raise substantially similar issues of law and fact.

27   MCC at pp. 16-17.  The two claims require determination of

28   whether Defendant violated TILA by failing to make timely

1  disclosure of all finance charges, other charges, and third party

2  charges imposed in connection with a mortgage loan or line of

3  credit.  See 15 U.S.C. §§ 1637, 1637a.  Plaintiffs contend that

4  Defendant utilized "the same or substantially similar disclosure

5  materials and procedures for its customers, irrespective of

6  location."

7      The motion was filed before the Court's ruling on the most

8  recent motion to dismiss.  The motion relies on the closing

9  instructions to set the maximum amount required of the borrowers.

10  However, the Court found that the closing instructions do not

11  place a maximum on the amount of hazard insurance that could be

12  required, but rather the discretionary clauses in the mortgage

13  agreements put it in the sound discretion of Defendant.  The

14  Court further found "[r]elevant state laws and the implied

15  covenants included in such agreements place limits on that

16  discretion."  MTD (Doc. #88) at p. 8; see Lane v. Wells Fargo

17  Bank N.A., C 12-04026 WHA, 2013 WL 269133, at *8 (N.D. Cal.

18  2013).  Although that motion dealt with solely hazard insurance,

19  the discretionary clause in Gooden's Deed of Trust relied on in

20  making that ruling extends to various forms of insurance,

21  including both hazard and flood insurance.  Buescher Decl. (Doc.

22  #83-4) Exh. 37, ¶ 5; Gooden Depo. 16:11-18:15.  Similar

23  discretionary language is found in Hall's mortgage.  Id. Exh. 12,

24  ¶ 5.

25      In addition, both agreements contain provisions that provide

26  the laws of the jurisdiction in which the property was located

27  would apply.  Id. ¶ 16; Buescher Decl. Exh. 37, ¶ 16.  Defendant

28  argues that TILA does not set any kind of maximum amount of flood

14

1    or hazard insurance that lenders may require.  Opp. at p. 16.  It

2    therefore contends that the respective state laws governing

3    implied contractual covenants, the calculation of replacement

4    value, and limitations on the amount of hazard and flood

5    insurance that can be required would control loans in those

6    states.  Furthermore, while TILA is a federal statute, the

7    underlying basis for these claims arises based on the

8    circumstances of the individual transactions and the unique

9    effect of the individual states' rules pertaining to them.  See

10   Lane v. Wells Fargo Bank N.A., 2013 WL 269133, at *14-15.

11       The Ninth Circuit has held that "the law on predominance

12   requires the district court to consider variations in state law

13   when a class action involves multiple jurisdictions."  Lozano v.

14   AT & T Wireless Servs., Inc., 504 F.3d 718, 728 (9th Cir. 2007).

15   "In a multi-state action, variations in state law may swamp any

16   common issues and defeat predominance."  Castano v. Am. Tobacco

17   Co., 84 F.3d 734, 741 (5th Cir. 1996).  Therefore, in determining

18   whether a plaintiff has met its burden, the district court must

19   consider how variations in state law affect predominance and

20   superiority and whether plaintiff has presented "a suitable and

21   realistic plan" for addressing them.  Id.; Zinser v. Accufix

22   Research Inst., Inc., 253 F.3d 1180, 1189 (opinion amended on

23   denial of reh'g, 273 F.3d 1266) (9th Cir. 2001); see also Lane v.

24   Wells Fargo Bank, N.A., C 12-04026 WHA, 2013 WL 3187410 (N.D.

25   Cal. 2013).

26       In its Motion for Class Certification, Plaintiffs argue that

27   variations in state law are "nonexistent among the classes in

28   this case."  MCC at p. 18.  Defendant points to various examples

1   of how state laws vary regarding maximums on insurance, the

2   appropriate calculations for replacement value, and the operation

3   of the implied covenant of good faith and fair dealing.  Opp. at

4   p. 18.   In their Reply, Plaintiffs' only response to this

5   argument is a single sentence in a footnote contending that

6   Defendant's argument would preclude any national TILA classes.

7   Reply at p. 7 n.1.

8        Because it is unclear how the variations in state law would

9   be dealt with, the Court finds that Plaintiffs have not met their

10  burden to establish the commonality and predominance requirements

11  of Rule 23 (a)(1) and (b)(3) for the Nationwide Classes for Flood

12  and Hazard Insurance.  Accordingly, certification for the TILA

13  classes is hereby denied on this alternate ground.

14            3.   <u>Typicality and Adequacy: Hazard Insurance Claims</u>

15       Defendant argues that the named Plaintiffs, Gooden and Hall,

16  are neither typical nor adequate.  Opp. at pp. 22-25.  It argues

17  there is not sufficient evidence that the named Plaintiffs were

18  subjected to force placed hazard insurance, thus undermining Rule

19  23 requirements.

20       In her deposition and in the First Amended Complaint, Gooden

21  relies on a billing statement, sent to her by Defendant in

22  April/May 2011, for her claim that hazard insurance was

23  improperly force placed on her property.  FAC ¶¶ 22-25;

24  Barilovits Decl. (Doc. #94-1) Exh. C (Gooden Depo.), 100-123.  On

25  the statement there are three line items entitled "Hazard

26  Insurance," "Flood Insurance" and "Addl. Hazard Ins."  Buescher

27  Decl. (Doc. #83-4) Exh. 35; MCC at p. 21.  Plaintiffs contend

28  that the "Addl. Hazard Ins." line item references a force placed

1   hazard policy.  Defendant contends that the line item is a catch-

2   all category and is actually indicating a charge for additional

3   flood insurance.  It argues there is no basis to believe that

4   hazard insurance was ever force placed on Gooden.

5        In the Reply, Plaintiffs rely on the deposition testimony of

6   Terri Curbeira, an Insurance Manager for Defendant.  Reply at p.

7   9.  In her deposition, Curbeira was asked about the line items on

8   the billing statement and testified that the "Addl. Haz. Ins."

9   indicated a force placed hazard insurance policy.  Curbeira Depo.

10  63:24-66:25.  However, Curbeira submitted a later declaration

11  stating that she misread the statement and misspoke in her

12  deposition.  Barilovits Decl. Exh. G ¶¶ 5-14.  She states in her

13  declaration that the line item in question actually references a

14  force placed or "gap" flood insurance policy.  Plaintiffs contend

15  that this change in statement should be rejected because Curbeira

16  should have gone through the errata process rather than waiting

17  seven months and submitting a declaration.  In addition, they

18  argue Curbeira's claim of mistake is not credible.

19       Plaintiffs have not provided any other evidence that Gooden

20  was ever subjected to improper force placement of hazard

21  insurance outside of the line item that Defendant contends

22  actually references flood insurance, nor do they explicitly

23  restate their contention that Gooden in fact was force placed

24  with such insurance.

25       As to named Plaintiff Hall, Defendant claims no hazard

26  policy was ever force placed on her property.  In the Motion for

27  Class Certification, Plaintiffs merely mention a bill sent by

28  Defendant to Hall charging her for "Addl. Hazard Ins.," similar

1    to Gooden's claim.  MCC at p. 21.  However, in addition,

2    Defendant points out that Hall testified that her claim regarding

3    a force placed hazard insurance policy, as stated in ¶ 27 of the

4    FAC, was mistaken.  Barilovits Decl. Exh. B ("Hall Depo.") 11:6-

5    12:1.  She further testified in her deposition that the only

6    policy force placed on her home was for flood insurance.  Id.

7    134:7-19.  In the Reply, Plaintiffs fail to address the issue.

8    Reply at pp. 8-10.

9         The Court finds Plaintiffs have failed to provide sufficient

10   evidence that either named Plaintiff was force placed for hazard

11   insurance.  Therefore, Plaintiffs' claims are not typical of the

12   hazard insurance classes they seek to certify in this motion,

13   and, without viable hazard insurance claims of their own, the

14   named Plaintiffs would clearly be inadequate to represent the

15   putative classes regarding such claims.  Accordingly, the Court

16   denies on this alternate ground Plaintiffs' motion to certify the

17   following classes for claims involving force placed hazard

18   insurance: the Nationwide Hazard Insurance Class (1st Cause of

19   Action - TILA claim); the California and New York breach of

20   contract subclasses (3rd Cause of Action - Breach of Contract

21   Claim); and the California Hazard Class (4th Cause of Action -

22   Cal. Civil Code § 2955.5 claim; 5th Cause of Action - Cal. Bus. &

23   Prof. Code § 17200 claim).

24

25                           III. ORDER

26        For the reasons set forth above and at the November 15,

27   2013 hearing, Plaintiffs' proposed classes are inappropriate for

28   certification.  Accordingly, Plaintiffs' motion for class

                                18

1   certification is DENIED in its entirety.

2           IT IS SO ORDERED.

3   Dated: December 11, 2013

4                                       JOHN A. MENDEZ,
                                        UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28